UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TIMOTHY WAYNE WILLIAMS** | * | **CASE NO:** |
| VS. | * | |
| **CITY OF MONROE, LOUISIANA** | * | |
| **VICTOR ZORDAN INDIVIDUALLY** | * | |
| **AND IN HIS CAPACITY AS CHIEF** | * | |
| **OF POLICE OF THE MONROE POLICE** | * | |
| **DEPARTMENT, JARED DESADIER, JOSHUA** | * | |
| **RACHOW, EUGENE ELLIS, DONALD BARTLEY,** | * | |
| **SEAN REDDICK, VINCENT GUITERREZ,** | * | |
| **TOMMY CROWSON, JAMES THIGPEN,** | * | |
| **JAY RUSSELL, "ABC INSURANCE COMPANY",** | * | |
| **"XYG INSURANCE COMPANY", "ABC** | * | |
| **INSURANCE COMPANY 2", "XYG INSURANCE** | * | |
| **COMPANY 2"** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT WITH JURY DEMAND**

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiff, Timothy Williams, and is domiciled in Ouachita Parish, and respectfully represent the following:

**PARTIES**

Plaintiff, Timothy Wayne Williams, is a black, male citizen of the United States of America and a major resident and domiciliary of the Parish of Ouachita.

1. Made Defendants herein are the following:

a) CHIEF VICTOR ZORDAN, is the Chief of Police of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

b) CITY OF MONROE, LOUISIANA, a local government entity and body politically created by statute, being a municipality, and political subdivision of the State of Louisiana, but not an agency, or department, or arm of the State of Louisiana, and owns, operates, manages, directs, and controls the MONROE POLICE DEPARTMENT ("MPD"), which employs Chief Zordan and Defendants Jared Desadier, Joshua Rachow, Eugene Ellis, Donald Bartley, Sean Riddick, Vincent Guiterrez, Tommy Crowson, and James Thigpen.

c) MONROE POLICE DEPARTMENT, which employs Defendant Victor Zordan and Defendants Defendants Jared Desadier, Joshua Rachow, Eugene Ellis, Donald Bartley, Sean Riddick, Vincent Guiterrez, Tommy Crowson, and James Thigpen.

d) JARED DESADIER, was at all relevant times to this complaint an officer in the Monroe Police Department, is a person of full age and of majority, domiciled in Ouachita Parish. S/he is sued in his individual capacity;

e) JOSHUA RACHOW, was at all relevant times to this complaint an officer in the Monroe Police Department, is a person of full age and of majority, domiciled in Ouachita Parish. S/he is sued in his individual capacity;

f) EUGENE ELLIS, was the Interim Chief of Police of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

g) DONALD BARTLEY, was the Assistant Chief of Police of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

h) SEAN REDDICK, was the Major of Police at all relevant times to this complaint of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

i) VINCENT GUITERREZ, was the Major of Police at all relevant times to this complaint of the Monroe Police Department ("MPD"), a person of full age and majority domiciled in Ouachita Parish. He is sued in his individual and official capacity;

j) TOMMY CROWSON, was at all relevant times to this complaint employed by MPD, was the supervisor of Defendants Jared Desadier and Rachow, and, upon information and belief, is a person of full age and majority. S/he is sued in both his/her individual and official capacities;

k) JAMES THIGPEN, was at all relevant times to this complaint employed by MPD, was the supervisor of Defendants Jared Desadier and Rachow, and, upon information and belief, is a person of full age and majority. S/he is sued in both his/her individual and official capacities;

l) ABC INSURANCE COMPANY, an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Chief Zordan, City of Monroe and Defendants Jared Desadier, Eugene Ellis, Donald Bartley, Sean Riddick, Gutierrez, Crowson, and Thigpen;

m) XYZ INSURANCE COMPANY, an insurance company authorized to do, and doing business in the State of Louisiana providing EXCESS liability coverage to the MPD, its agents, and the City of Monroe;

n) JAY RUSSELL, in his official capacity, a person of full age and majority, who at all times was and is Sheriff of the Ouachita Parish Sheriff's Office in Ouachita Parish, Louisiana;

o) ABC INSURANCE COMPANY 2, an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Sheriff Jay Russell and the Ouachita Parish Sheriff's Office;

p) XYZ INSURANCE COMPANY 2, an insurance company authorized to do, and doing business in the State of Louisiana providing EXCESS liability coverage to the OPSO, its agents, and the Parish of Ouachita.

THIS PETITION PUTS ON NOTICE ANY EXCESS POLICY COVERING THE MONROE POLICE DEPARTMENT, THE CITY OF MONROE, CHIEF VICTOR ZORDAN, ANY EMPLOYEE OF THE MONROE POLICE DEPARTMENT, OUACHITA PARISH SHERIFF'S DEPARTMENT, SHERIFF JAY RUSSELL, ANY EMPLOYEE OF THE OUACHITA PARISH SHERIFF'S OFFICE, AND ANY POTENTIAL UNION POLICY COVERING THE INDIVIDUAL LOUISIANA POLICE DEPARTMENT NAMED INDIVIDUALLY IN THIS SUIT.

2.
**JURISDICTION AND VENUE**

The United States District Court has jurisdiction over the subject matter of this complaint under 42 U.S.C. 1983 and 28 U.S.C. 1331, 1343(a)(3), and 1367(a). The Western District of Louisiana is the appropriate venue to bring this complaint, because the facts that give rise to Plaintiffs' claims all took place within the Western District of Louisiana.

3.

**FACTUAL ALLEGATIONS SURROUNDING APRIL 21, 2020**

On April 21, 2020 at approximately 11:15 pm, Officers Anthony Smith and Jeff Robinson responded to a complaint in the area of that escalated to 411 N. 4th Street, Monroe, LA 71201. According to the Monroe Police Department's report (Exhibit A), the complaint stated it arose from an audible alarm in the area.

4.

Mr. Williams posed no threat and was simply walking to a safe destination. After being stopped, Mr. Williams complied with the Officers' requests and provided identification and any and all items he had in his possession, which included a rose bowl and toy gun, which he placed on the Officers vehicle. Mr. Williams continued to comply with all requests.

5.

Mr. Williams proceeded to run away in the direction of N. 4th Street as he was afraid of what could happen to him, even though he had committed no crimes at the time he was stopped.

6.

At the time that Mr. Williams was running away Defendant Jared Desadier and Joshua Rachow arrived in the area where he had come to a resting place and ordered that he stop and comply with their requests.

7.

Mr. Williams immediately complied, stopped running, placed his hands above his head swiftly, and lied down on the grown with his hands behind his back. Mr. Williams had completely surrendered before the Jared Desadier and Joshua Rachow came in contact with him.

8.

Jared Desadier ran up to Mr. Williams and proceeded to kick him in the mouth/face area with unjustified force, kicking at least one tooth out of Mr. Williams mouth. Defendant Desadier then utilized the use of the taser extremely close to Mr. Williams body several times and punched his body several times. Defendant Desadier further grabbed Mr. Williams by the hair and proceeded to pound his head in the concrete multiple times.

9.

Jared Desadier had not properly activated his body camera as required by him.

10.

Joshua Rachow attempted to assist in arresting Mr. Williams but offered no aid to him while Jared Desadier continually beat him.

11.

Joshua Rachow activated his body camera footage; however, he would turn his body during times that Mr. Williams was being beaten by Jared Desadier so as to intentionally not capture the footage on his camera and/or to search the area to see if any other witnesses saw the brutal beating.

12.

At no time did Jared Desadier or Joshua Rachow offer medical assistance or help to Mr.Williams after he was severely beaten. Instead, they walked him to the MPD vehicles and proceeded to slam his head on the cars while he was yet detained.

13.

Additional Officers began to arrive on the scene; including but not limited to, Supervisor Tommy Crowson and Supervisor Thigpen. At no time before, during, or after Defendant Jared Desadier viciously beat Mr.Williams did any Officers on the scene make any attempt to intervene, de-escalate the situation, or use non-lethal force.

14.

Mr. Williams made his initial complaint to Supervising Officers Crowson and Thigpen; however, they failed to take the complaint, did not take him serious, failed to forward the complaint, and failed to offer any medical aid to Mr. Williams at any time.

15.

Mr. Williams suffered an Epilepsy Seizure on the scene, which caused him to fall on the ground and hit his head. No officers on the scene offered any assistance or medical help to Mr. Williams. Instead, Supervising Officers Crowson and Thigpen made jokes about his epilepsy and mocked him continually.

16.

Mr. Williams was transported to St. Francis Medical Center where he was treated and was going to be left by the attending Officers. However, Mr. Williams made an attempt to speak

negatively to the attending nurse so that he could be properly booked into OCC. Mr. Williams did this act so that the Officers would not escape accountability and be brought to justice for their criminal acts and violations of his civil rights.

17.

Defendants Jared Desadier, Joshua Rachow, Tommy Crowson, and James Thigpen were all law enforcement agents participating in the response to a complaint made at the 400 block of North 4th Street.

18.

At all times relevant to this complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff. At all times to this Complaint, all defendants acted under the color of state law. The report provides very limited information of the encounter and does not state inform of the incident whereby Mr. Williams was brutally beaten, kicked in the mouth knocking at least one tooth out and treated inhumanely.

19.

The officer's report is not completely factual and is lacking many details. Further, Defendant Officers and Supervising Officers on the scene of the incident who failed to adequately report, failed to take Mr. Williams complaint, falsified the police report and failed to offer Mr. Williams thorough treatment before Acadian Ambulance arrived.

20.

Based on the four (4) MPD officers placed on administrative leave, the Plaintiff avers that Jared Desadier, Joshua Rachow, Tommy Crowson, and Vincent Guiterrez were but some of the MPD officers that conspired together with in a cover-up with Defendants Major Sean Riddick, and Assistant Chief Donald Bartley to obstruct justice and violate Timothy William's rights.

21.

There was no legal cause to justify the use of excessive force against Mr. Williams, and the force used against Mr. Williams was unreasonable and excessive. At no time did Mr. Williams make any threats or initiate any confrontations with either civilians or officers. Mr. Williams does admit to running away due to fear of losing his life with the recent police brutality happenings; however, he stopped, surrendered, and complied with the Officers' request much before he was kicked in the mouth and brutally beaten. At no time did Mr. Williams threaten anyone with a weapon. At no time did Mr. Williams verbally make any threats or statements of intention to harm anyone.

22.

At all times relevant to this Complaint, the conduct of Defendants Desadier, Rachow, Crowson, Ellis, Bartley, and Thigpen acted in willful, reckless, and callous disregard of Mr. Williams' life and rights under federal and state law.

23.

All Defendants acted jointly and in concert and conspiracy which lead to the death of Mr. Williams. Defendants Desadier, Joshua Rachow, Tommy Crowson, Eugene Ellis, Bartley, and James Thigpen were all aware of falsified report as these officers specifically falsified the facts concerning Mr. Williams, failed to take Mr. Williams complaint, failed to forward Mr. Williams complaint, failed to intervene in the beating of Mr. Williams, and conspired to cover up to obstruct justice and violate Mr. Williams' rights.

24.

Mr. Williams attempted to make additional complaints upon being released from jail between May and July 2020. Specifically, on or about June 17, 2020, Mr. Williams arrived at 700 Wood Street and requested to make a complaint. Mr. Williams met with Defendants Guiterrez and Assistant Chief of Police Bartley and provided the names of the officers involved and filed a criminal complaint.

25.

On or about July 6, 2020, Mr. Williams met with Defendant Major Guiterrez and Defendant Sergeant Reddick to follow up on the filed complaint and was advised that they were reviewing body camera footage. It was not until Interim Chief Reginald Brown learned of what happened that Defendant Desadier was placed on leave.

26.

Mr. Williams' photos, reports, complaints etc. were not logged into evidence until Mr. Williams provided his attorney's card to Defendant Guiterrez and Reddick, at which point he was finally taken serious.

27.

Former Interim Chief Reginald Brown was chief during the time that the incident occurred upon Mr. Williams; however, Defendants Bartley, Guiterrez, Crowson and Riddick intentionally did not inform Interim Chief Reginald Brown of the brutality that Mr. Williams faced. Said Defendants acted to conspire to cover up the incident, despite being informed by Mr. Williams and taking his complaint on at least one occasion subsequent to the incident of April 21, 2020. Thus, Defendants failed to adequately report the incident, did not take Mr. Williams' statement seriously, and failed to forward the report to the Interim Chief at the time that the incident was repetitively reported.

28.

Defendant Ellis purposely refused to use Former Interim Police Chief Reginald Brown as a witness when investigating Defendant Guiterrez. Thus, Defendant Ellis did not adequately conduct a proper investigation into the matter.

29.

As a direct result and proximate result of the conduct of all Defendants, Mr. Williams suffered and continues to suffer extraordinary damages, including emotional distress, and trauma, loss of the enjoyment of life, psychological harm, and pain and suffering, some of which may be permanent.

## FACTUAL ALLEGATIONS SURROUNDING EMPLOYMENT, TRAINING, SUPERVISION, AND DISCIPLINE OF MPD OFFICERS

30.

The Ouachita Parish utilizes and employs its own police department known as the MPD, which is responsible for decision making and policy making for the MPD. The excessive force, misrepresentations, and illegal conduct sued upon herein occurred in the Ouachita Parish, and in the exclusive territorial jurisdiction of the Monroe Police Department and under the care of the City of Monroe.

31.

In Chief Zordan's official capacity, he is responsible for adopting, implementing, promulgating, and enforcing policies, customs, and practices pertaining to making arrest and preserving peace in the City of Monroe.

32.

Additionally, MPD is responsible for the screening, hiring, disciplining, training, supervising, and the retraining of Monroe Police Officers to ensure each officer was and is qualified and properly trained to perform the duties and functions of a peace officer including making arrests, preserving the peace, and the constitutional use of deadly force. MPD has a responsibility in supervising and enforcing and implementing these training, discipline, and enforcement of these policies, customs, practices.

33.

Defendants Crowson, Guitterez, Thigpen are supervisors at MPD, along with Defendant Bartley and specifically the supervisors of Defendants. Thus, Defendants Bartley, Crowson, Gutierrez, and Thigpen are responsible for the screening, hiring, disciplining, training, supervising, and the retraining of Monroe Police Officers to ensure each officer was and is qualified and properly trained to perform the duties and functions of a peace officer including making arrests, preserving the peace, and the constitutional use of deadly force. Defendants Bartley, Crowson, Guitterez, and Thigpen have a responsibility in supervising and enforcing and implementing these training, discipline, and enforcement of these policies, customs, practices.

34.

Based on the extreme misconduct of Defendants Desadier and Rachow and upon

information and belief, Defendants Bartley, Crowson, Guitterez, and Thigpen did not properly train, supervise, and/or discipline Defendants Desadier and Rachow with regard to proper police practices. Further, all Defendants acted to conspire to cover up the incident in its entirety.

35.

Upon information and belief, in willful, reckless, and callous disregard to Mr. Williams' life and rights under federal and state law, Defendants Bartley, Crowson and Thigpen did not have an adequately trained upon, promulgated, and enforced de-escalation policy in place for the City of Monroe at all relevant times upon which officers were sufficiently or adequately trained so as to know how to properly de-escalate situations.

36.

This incident shows that Mr. Williams is not an outlier but rather part of a continuing pattern, custom, and practice of Monroe Police Department and Ouachita Parish Sheriff's Office. Upon information and belief, MPD and OPSO has not changed their hiring, training, or supervision policies and their enforcement despite the numerous use of force complaints and lawsuits. Further, the MPD has a history of not properly disciplining or firing officers when they engage in illegal or improper conduct, including excessive use of force and improper deadly use of force. This is evidenced by the fact that Jared Desadier was previously fired Monroe Police Department but was subsequently rehired and allowed to patrol as Officer in the unit. But for reinstating Desadier, Mr. Williams may not have been beaten senselessly.

37.

Defendants Desadier, Rachow, Thigpen, Bartley, Ellis and Crowson's extreme misconduct was a product of this environment and undertaken pursuant to de facto policies, practices, and/or customs—both written and unwritten—of the MPD and the City of Monroe. Defendants Thigpen, Bartley, Ellis and Crowson are guilty of the following wrongful acts, including but not limited to:

1. Failing to properly hire, supervise, and train MPD Officers;

2. Failure to promulgate, train, and enforce an adequate and constitutional use of force policy;

3. Failure to promulgate, train, and enforce an adequate and constitutional lethal use of

force policy;

4. Failure to promulgate, train, and enforce an adequate and constitutional de-escalation tactics;

5. Failure to promulgate, train, and enforce an adequate and constitutional methods through which MPD officers should interact with citizens who are African American and homeless;

6.
7. Failure to promulgate, train, and enforce an adequate and constitutional non-discriminatory law enforcement practices to protect African-American citizens of Monroe;

8. Failing to reprimand and discipline MPD Officers who engage in misconduct;

9. Failing to retrain and/or otherwise control MPD Officers who engage in excessive force and/or unjustified shooting against civilians;

10. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

11. Failing and inadequately investigating complaints and allegations of excessive force and other misconduct by MPD Officers;

12. Failure to require and enforce MPD officers to accurately and timely report misconduct they are aware other MPD officers are conducting or have conducted;

13. Failing to retrain and otherwise control MPD Officers who engage in excessive force and unjustified use of deadly force;

14. Failing to properly investigate allegations prior to issuing arrest warrants;

15. Tacitly approving of MPD Officers using their power and position to interfere with other citizens' rights;

16. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's agents, servants, and employees in its Police Department; and

17. Allowing the practice and custom of a "police code of silence," resulting in MPD

      Officers refusing to report instances of police misconduct of which they are aware.

18. Failure to train, supervise, and discipline MPD officers regarding providing honest and accurate accounts of officer involved shootings to investigating authorities;

38.

As a direct result and proximate result of the conduct of Defendants, Plaintiff suffered and continues to suffer extraordinary damages, including the prolonged loss of liberty, emotional distress, and trauma, loss of the enjoyment of life, psychological harm, and pain and suffering, some of which may be permanent, as well as financial losses.

## CAUSES OF ACTION

39.

**Count I**
**Federal Constitutional Claims**

**Plaintiff v. Defendants all Defendants**

The actions of all Defendants in conspiring to cover up the incident and specifically Defendants Desadier and Rachow violated Mr. Williams' rights under the Fourth and Fourteenth Amendments to be free from the unlawful use of force.

**Count II**
**Federal Constitutional Claims**

**Plaintiff v. Defendants in his/her Official Capacity, MPD, and City of Monroe.**

40.

The actions or inactions of Defendant MPD, Defendant Zordan in his Official Capacity,

All Defendants in his/her official capacity, and Defendant City of Monroe violated Mr. Williams Fourth and Fourteenth Amendments Rights to the U.S. Constitution.

41.

The actions or inactions of Defendant MPD, Defendant Zordan in his Official Capacity,

All Defendants in his/her official capacity, Defendant. City of Monroe violated Mr. Williams

rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

**Count III**
**Federal Constitutional Claims**

**Plaintiff v. Defendant the City of Monroe, MPD, Defendant Zordan in his Official Capacity, and all Defendants in his/her Official Capacity**
**Federal Constitutional Claims**

42.

The violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, Plaintiff's damages, and/or the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of the Defendant the City of Monroe, Defendant MPD, and Defendant Zordan in his Official Capacity which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

1. Use of force by police officers;
2. Police officers' duties and responsibilities to engage in proper de-escalation techniques;
3. The proper exercise of police powers, including not limited to the making of an arrest and the use of deadly force;
4. Police Officers duties not to attempt to kill its citizens;
5. Police Officers duties not to un-necessarily use deadly force;
6. Non-race-based policing and use of force;
7. The failure to identify and take remedial or disciplinary action against officers who were the subject of prior civilian or internal complaints of misconduct;
8. Failing to retrain and/or otherwise control officers who engage in excessive force and/or unjustified shooting against civilians;
9. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;
10. The hiring and retention of officers who are unqualified for their employment positions;
11. Failure to require, discipline, and supervise MPD officers for not reporting illegal, impermissible, improper, or any other conduct of other MPD officers that is unbefitting of an officer or violates MPD policies and protocols;
12. MPD's use of their status as officers to employ the use of force or to achieve ends not reasonably related to their law enforcement duties;
13. The failure of officers to follow established policies, procedures, directive, and instructions regarding arrests, use of force, and institution of criminal charges under such circumstances as presented by this case;
14. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Monroe Police Departments;
15. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's City agents, servants, and employees in its Police Department;
16. Failure to train, supervise, and discipline Officers who are not honest and accurate with investigating agencies about officer involved shootings, as well as harass and intimidate civilian witnesses.

**Count IV State Law Claims**

43.

**Plaintiff v. Defendants Desadier, Rachow, Crowson, Thigpen, Ellis, and Bartley.** Plaintiffs alleges that Defendants are responsible and liable for the damages and injuries they have suffered as a result of said Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes

damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; and Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

The actions and/or inactions of Defendants Desadier, Rachow, Crowson, Thigpen, Ellis under the law of the State of Louisiana, constitute the torts of:

1. Assault;
2. Battery;
3. Aggravated Battery;
4. Negligent Infliction of Emotional Distress;
5. Intentional Infliction of Emotional Distress;
6. Malfeasance in Office;

**Count V State Law Claims**

44.

**Plaintiff v. Defendant MPD, Defendant Zordan in his Official Capacity, Defendant City of Monroe, and All Defendants in his/her Official Capacity.**

Plaintiff alleges that Defendants Defendant Zordan and Defendant MPD, Defendant Zordan, and All Defendants in his/her official capacity are responsible and liable for the damages and injuries they have suffered as a result of the Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody"; and Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed...responsibility only attaches, when the masters or employers...might have prevented the act which caused the damage, and have not done it."

The actions and/or inactions of Defendant MPD, Defendant Zordan in his Official Capacity, Defendant City of Monroe, under the law of the State of Louisiana, constitute the torts

of:

1. Assault;
2. Battery;
3. Aggravated Battery;
4. Intentional Infliction of Emotional Distress;
5. Negligent Infliction of Emotional Distress;
6. Negligent Hiring;
7. Negligent Retention;
8. Negligent Supervision;
9. Malfeasance in office;

45.

**FACTUAL ALLEGATIONS SURROUNDING INCIDENTS AT OUACHITA PARISH SHERIFF'S OFFICE**

Mr. Williams believes that the Defendants are liable pursuant to Article Section 2 of the Louisiana State Constitution, which provides that no person shall be deprived of life, liberty, or property except by due process of law.

46.

On or about April 21, 2020, after being treated at St. Francis Medical Center, Mr. Williams was going to be released by MPD; however, he did not want MPD to get away with brutalizing him and covering-up the incident. Thus, Mr. Williams made a negative comment to the one of the attending nurses, which caused the MPD officers to arrest him to be booked at Ouachita Parish Correctional Center (hereinafter referred to as "OCC").

47.

After being transported to OCC, Mr. Williams was booked and taken to the "isolation/suicide cell " or "rubber room" without being fully informed as to the reasons for being isolated from all others for approximately fourteen days, when others were also being booked and placed in regular isolation cell.

48.

Mr. Williams avers that he was immediately transferred to the "isolation/suicide cell" or "rubber room" so as to allow his wounds to heal before the general public could view his injuries and become aware of how he was brutalized and traumatized by Defendant Desadier.

49.

While incarcerated Mr. Williams was initially denied the opportunity to make his allotted phone call to his Pastor, as OCC employers did grant him access to his "ID card" to allow him the opportunity for at least two weeks. Mr. Williams was denied that right.

50.

While incarcerated Mr. Williams was also denied medication ordered by his physician and health care providers for approximately three weeks without just cause.

51.

Mr. Williams suffered at least two epileptic seizures while being isolated during incarceration at OCC and while being denied proper and adequate treatment as a matter of law.

52.

Mr. Williams received little or no medical attention for his wounds while incarcerated at OCC.

53.

Mr. Williams strongly believes that due to the actions of the OCC employees, under the care of Defendant, Sheriff Jay Russell that he is also, on behalf of the employees of OCC, involved in the conspiracy to cover-up MPD's. Further, Defendant Russell is liable pursuant to Article Section 2 of the Louisiana State Constitution, which provides that no person shall be deprived of life, liberty, or property except by due process of law.

54.

As a direct and proximate cause of the acts or failure to act as set forth in above, Mr. Williams suffered physical injury and severe mental anguish in violation of their violation of their constitutional and statutory rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. section 1983.

55.

Petitioner believes that Defendants are liable pursuant to Louisiana Revised Statute 42: 1441.3 which provides that municipalities are responsible for the actions, offenses, and torts of their officials and deputy officials.

56.

Defendant Russell through its Police Department knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control Officers in his care from depriving Petitioner of his constitutional and statutory rights, privileges and immunities under Federal and the laws and Constitution of the State of Louisiana.

57.

Defendant Russell is liable for the following damages:

1. Damages for failure to provide Petitioner with prescribed medication for an extended period of time;
2. Failure to provide Petitioner with the required "ID Card" to make allotted phone calls while incarcerated at OCC;
3. Failure to adequately treat Petitioner for his injuries while incarcerated;
4. Past mental anguish
5. Future mental anguish
6. Past and present suffering
7. Past Loss of Enjoyment of Life
8. Future Loss of Enjoyment of Life
9. Past medical expenses
10. Future medical expenses
11. Punitive damages under Section 1983 for torture and injury done with malice
12. Attorney's fees and court costs; and
13. Petitioner prays for such damages as reasonable in the premises and all equitable relief.

### JURY TRIAL DEMAND

The Plaintiffs request a trial by jury.

### PRAYER FOR RELIEF

The Plaintiff respectfully request:

1. Compensatory damages as to all Defendants;

2. Special Damages as to all Defendants;

3. Punitive damages as to all Defendants, Zordan, and Russell in his/her individual capacity;
4. Reasonable attorneys' fees and costs as to all Defendants; and

5. Such other and further relief as may appear just and appropriate

**WHEREFORE**, Timothy Williams prays that a copy of the above petition is served upon all of the Defendants named herein, and that after all proceedings a judgment is rendered in favor of

Plaintiff and against Defendants for all relief deemed equitable under the law including attorney's fees and costs.

Respectfully submitted,

*/s/ Donecia Banks-Miley*

Donecia Banks-Miley (#35641) PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP

901 N. 3rd Street, Monroe, LA 71201 (318) 605-4607 dbmiley@pwblaw.net

*/s/ Jessica Williams*

Jessica Williams (#32956) PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP

901 N. 3rd Street, Monroe, LA 71201 (318) 605-4607 jwill@pwblaw.net

*/s/ Kristen Pleasant*

Kristen Pleasant (#30672) PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP

901 N. 3rd Street, Monroe, LA 71201 (318) 605-4607 kpleasant@pwblaw.net