**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

TIMOTHY WAYNE WILLIAMS            CIVIL ACTION NO. 21-1061

VERSUS                           JUDGE ELIZABETH E. FOOTE

VICTOR ZORDAN, ET AL.            MAGISTRATE JUDGE PEREZ-MONTES

<u>**MEMORANDUM RULING**</u>

Before the Court are three motions to dismiss:  (1) a partial motion to dismiss by the City of Monroe and all officers sued in their official capacities (the "City Defendants") [Record Document 45]; (2) a motion to dismiss by individual-capacity Defendants Jared Desadier, Joshua Rachow, Eugene Ellis, Donald Bartley, Sean Reddick, Vincent Guiterrez, Tommy Crowson, and James Thigpen (the "Officer Defendants") [Record Document 49]; and (3) a partial motion to dismiss by Ouachita Parish Sheriff Jay Russell [Record Document 51].  The Plaintiff, Timothy Williams, opposes the City Defendants' motion and the Officer Defendants' motion, but does not oppose Sheriff Russell's motion.  For the following reasons, the City Defendants' partial motion to dismiss [Record Document 45] is granted in part and denied in part; the Officer Defendants' motion to dismiss [Record Document 49] is construed as a motion to quash service, which is granted; and Sheriff Russell's partial motion to dismiss [Record Document 51] is granted.

I.     **Background.**

       A.     <u>Facts</u>.

       On April 21, 2021, Williams filed the instant civil rights complaint against various law enforcement personnel, along with the City of Monroe, the Monroe Police Department,

1

and four insurance companies.  Record Document 1.  Williams alleges that Monroe Police Department officers used excessive force against him, denied him appropriate medical treatment, and failed to take his complaints of abuse seriously by instituting a proper investigation.

For purposes of this motion, the Court will accept all well-pleaded facts as true and construe the allegations in the light most favorable to the Plaintiff.[1]  On the evening of April 21, 2020, Williams was walking through downtown Monroe, Louisiana.  Monroe police officers responded to an audible alarm in the area near Williams's location.  The officers at the scene detained Williams and questioned him.  He provided them with the items in his possession, which included drug paraphernalia and a toy gun.  Then, Williams fled the scene on foot.  Defendants Desadier and Rachow, both of whom were police officers with the Monroe Police Department, pursued Williams, eventually apprehending him in an empty parking lot.  Rachow, who had drawn his taser, ordered Williams to stop running, lie on the ground, and put his hands behind his back.  Williams complied.  Then, Desadier asked Rachow if he was "hot," which was a question designed to determine whether Rachow's body camera was running.  Rachow said it was not, though it actually was recording the events.

---

[1] To the extent they do not contradict the well-pleaded factual allegations in this case, the Court also takes judicial notice of the inculpatory facts to which Desadier admitted in his guilty plea to the crime of deprivation of civil rights under color of law, in violation of 18 U.S.C. § 242.  See United States of America v. Desadier, 3:21-cr-00274.  "[A] court may permissibly refer to matters of public record."  Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); see also Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005).

Desadier ran across the parking lot to Williams, who, having fully surrendered, was still lying prone on the ground, and forcefully kicked Williams in the face.  Although Rachow was evidently attempting to handcuff Williams and Williams was fully compliant, Desadier delivered several additional blows to Williams's head and body.  Rachow's recording shows that he turned his body away from Desadier, potentially to avoid capturing Desadier's acts on camera.  Eventually, Desadier and Rachow escorted Williams to a police car where his head was slammed down against the vehicle.  Defendants Crowson and Thigpen, both of whom were Monroe Police Department supervisors, arrived on the scene during this time. Williams complained to them about what had transpired, but they failed to accept his excessive force complaint.  Williams then suffered an epileptic seizure, causing him to fall to the ground and hit his head.  Although Williams alleges that he was not offered any medical aid at the scene, the Court notes that medics arrived and took Williams to the hospital.

At the hospital, Williams claims that he intentionally spoke "negatively" to the attending nurse to ensure he would be booked into jail at the Ouachita Correctional Center ("OCC") and thus guarantee that the Defendants "would not escape accountability and be brought to justice . . . ."  Record Document 39, p. 7.  At OCC, he asserts that he was placed into an "isolation/suicide cell or rubber room" and isolated for fourteen days "to allow his wounds to heal before the general public could view his injuries;" that he was denied the right to call his pastor; that he was denied doctor-prescribed medications for three weeks; that he suffered two epileptic seizures and was "denied proper and adequate

treatment as a matter of law;" and that he "received little or no medical attention for his wounds." Id. at p. 19.

When he was released from jail, Williams tried to pursue his excessive force complaint.  He alleges, however, that the police report of the incident contained very little information about the encounter and, more importantly, omitted the fact that Defendant Desadier beat and kicked him.  Williams alleges that on the night in question and thereafter, Monroe police officers failed to listen to his complaint of what happened, failed to report what happened, and falsified the police report.

Between May and July of 2020, Williams tried to follow up on his excessive force complaint with the Monroe Police Department.  On June 17, 2020, he met with Defendant Guiterrez, a Major in the Monroe Police Department, and Defendant Bartley, the Assistant Chief of Police, to file a criminal complaint and identify the officers involved.  On July 6, 2020, Williams met with Defendant Guiterrez and Defendant Reddick, a Major in the Monroe Police Department, to follow up; at that time, he was told they were reviewing the body camera footage.  Williams argues that Desadier was not placed on leave until Interim Chief Reginald Brown (who was allegedly Interim Chief at the time of the events) learned of what happened.  Williams submits that his photos, reports, and complaints were not logged into evidence until he provided Defendants Guiterrez and Reddick with his attorney's business card.  As to Defendant Ellis, also Interim Chief of Police at some undefined point in the chronology of events, Williams claims that Ellis "purposely refused to use Former Interim Police Chief Reginald Brown as a witness when investigating

Defendant Guiterrez.   Thus, Defendant Ellis did not adequately conduct a proper investigation into this matter."  Record Document 39, p. 10.

B.    <u>Procedural History</u>.

Williams has filed the instant suit against the following entities and officers:  (1) Monroe Chief of Police Victor Zordan in his official capacity; (2) Desadier in his individual capacity;[2] (3) Rachow in his individual capacity; (4) Ellis in his individual and official capacities; (5) Bartley in his individual and official capacities; (6) Reddick in his individual and official capacities; (7) Guiterrez in his individual and official capacities; (8) Crowson in his individual and official capacities; (9) Thigpen in his individual and official capacities; (10) the City of Monroe; (11) Ouachita Parish Sheriff Jay Russell in his official capacity; and (12) four unidentified insurance companies who insured the City of Monroe and the Ouachita Parish Sheriff's Office.[3]

Williams amended his complaint on May 3, 2021.  Record Document 5.  The Defendants then moved to dismiss the claims against them based, in part, on insufficient service of process.  The Court agreed that Williams had not effectuated service against some of the Defendants; that is, for some Defendants, he failed to serve a summons with the complaint, and for Defendants Zordan, Reddick, and Guiterrez, he failed to effectuate individual service on them, in that he served them in their official capacities only.  Record

---

[2] The Court notes that Desadier has entered a guilty plea in federal court to one count of deprivation of civil rights based on the events that occurred during Williams's arrest. <u>See</u> <u>United States v. Desadier</u>, 3:21-cr-00274; Record Document 28.

[3] This is the current recitation of the Defendants and the capacities in which they have been sued, as opposed to the original list of Defendants and respective capacities that were set forth in the original complaint.

Document 35.  The Court also found that, based upon the Plaintiff's concession, the following claims could be dismissed:  the claims against Zordan in his individual capacity; all of Williams's claims against the Monroe Police Department; Williams's claims for punitive damages against the City of Monroe; and Williams's claims for punitive damages against the Monroe Police Department officers in their official capacities.  Id. at p. 7.  Thus, the Court ordered Williams to amend his complaint again to omit the dismissed claims and effectuate service on the Defendants in compliance with Rule 4 by October 21, 2022.  Id.

On October 21, 2022, Plaintiff's counsel filed a motion for extension of time to effectuate service, asking for sixty additional days to complete service.  Record Document 36.[4]  Defendants consented to the extension of time.  At the close of the sixty-day extension, on December 20, 2022, at 9:25 p.m., Plaintiff's counsel filed the second amended complaint.  Record Document 39.  The timing of the second amended complaint's filing is significant, as Defendants allege that the service that was attempted on them that day and the day prior (the legal effectiveness of which is disputed) happened before the second amended complaint was even filed into the record.  Rather, they were served, or attempted to be served, with the amended complaint from May 2021, not the second amended complaint.

The Court will now address each of the Defendants' pending motions.

**II.    The Officer Defendants' Motion to Dismiss.**

Pursuant to Federal Rule of Civil Procedure 12(b)(5), the Officer Defendants, i.e., those sued in their individual capacities, seek dismissal of the second amended complaint

---

[4] The motion for extension of time [Record Document 36] is granted.

based on improper service.  Williams opposes the motion, or in the alternative, asks for the opportunity to cure any deficiencies in service.

In the instant case, the Officer Defendants seek dismissal for three reasons: (1) they were not served with the second amended complaint at all; (2) they were not served in compliance with Rule 4; and (3) the time for service (even with the sixty-day extension) has passed.  For purposes of this motion, the parties do not dispute the facts surrounding service, but instead debate the legal efficacy of Plaintiff's counsel's actions.

A.    Facts Regarding Service.

On December 19, 2022, Plaintiff's counsel served Defendant Desadier through his attorney, Brad Calvit.  Record Document 40, p. 3.  On December 20, 2022, Plaintiff's counsel served the City of Monroe by serving City Attorney Angie Sturdivant at City Hall and then later served Mrs. Sturdivant again by serving her husband at home.  Record Documents 40-1 and 40-2.[5]   That same day, Plaintiff's counsel tried to serve Mr. Creekbaum, attorney of record for all other Officer Defendants except for Desadier.  The proof of service for Defendants Rachow, Crowson, Reddick, Ellis, Thigpen, Bartley, and Guiterrez reflects a handwritten note at the bottom that states: "Service refused by Assistant City Attorney Brandon Creekbaum."  Record Document 42, pp. 1-7.

---

[5] Evidently, Plaintiff served Mrs. Sturdivant at City Hall earlier in the day but then realized defense counsel returned the summons for the City of Monroe; therefore, he had Mrs. Sturdivant re-served at home.

B.   <u>Service of Wrong Complaint</u>.

The Defendants aver that when Plaintiff's counsel attempted service, they were being served with the amended complaint and contend that the second amended complaint had not even been filed in the record at the time service was attempted.  A reading of the second amended complaint bears out Defendants' representations.  The second amended complaint clearly includes a recitation of events that happened with regard to service attempts earlier that day, a point in time that clearly <u>preceded</u> the filing of the second amended complaint.  Indeed, page 3 of the second amended complaint states:

> "Plaintiff's attempt of service to Defendants, VICTOR ZORDAN, JOSHUA RACHOW, EUGENE ELLIS, SEAN REDDICK, VINCENT GUITERREZ, TOMMY CROWSON AND JAMES THIGPEN were *refused* by City Attorneys Angie Sturdivant and Brandon Creekbaum who are their representing attorneys. Attorneys Sturdivant and Creekbaum advised Chief Marshall Cherry that the time had lapsed to receive service for these Defendants; however, they accepted service for the City of Monroe.

Record Document 39, p. 3 (emphasis in original).

The problem with service of an old complaint (here, the May 2021 amended complaint) seems obvious.  So, too, does the act of serving the amended complaint only to file a second amended complaint hours later.  "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." <u>Stewart v. City of Houston Police Dep't</u>, 372 F. App'x 475, 478 (5th Cir. 2010) (quoting <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994)).  Here, Plaintiff's counsel knew she would be filing the second amended complaint that day.  Thus, it was pointless to serve the

amended complaint on any Defendant because that complaint was moot as soon as the second amended complaint was filed, which in this case, was a mere matter of hours later. Second, as Plaintiff's counsel should know, the governing complaint must be served on all Defendants, which did not occur.  Third, the Court had already adjudicated and resolved issues surrounding the amended complaint; there was a Court order in place directing Plaintiff "to amend his complaint to omit the dismissed claims and effectuate service on the Defendants in compliance with Rule 4 . . . ."  Record Document 35, p. 7.   By simply re-serving a complaint that the Court had ordered to be amended, Plaintiff's actions were in clear violation of the Court's order.

      C.    Manner of Service.

The more significant legal issue raised by Defendants is their insistence that they were not lawfully served in this matter.  Instead, Plaintiff served, or attempted to serve, the Defendants' attorneys of record, which is legally invalid.

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process was not made in the appropriate manner.  Gartin v. Par Pharm. Co., Inc., 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (noting that Rule 12(b)(4) motions concern the form of process, while Rule 12(b)(5) motions challenge the mode, manner, or lack of delivery). "In the absence of valid service of process, proceedings against a party are void."  Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc., 635 F.2d 434, 435 (5th Cir. 1981).  This is because a court cannot exercise personal jurisdiction over a party who has not been properly served.  Id.  "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service."

Sys. Signs Supplies v. U.S. Dep't of Just., 1013 (5th Cir. 1990).  A return of service is prima facie evidence of the manner of service.  Nabulsi v. Nahyan, 2009 WL 1658017, *4 (S.D. Tex. June 12, 2009).  District courts may consider affidavits or declarations to resolve the Rule 12(b)(5) motion.  See Kitchen v. Walk-On's Bistreaux & Bar, No. 19-1062, 2020 WL 2404911, *1 (W.D. La. May 12, 2020).  Ordinarily, "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant."  Gregory v. U.S./U.S. Bankr. Ct. for Dist. of Colorado, 942 F.2d 1498, 1500–01 (10th Cir. 1991) (citation and quotation marks omitted).

Rule 4(c) provides that every defendant must be served with both a summons and a copy of the complaint.  Fed. R. Civ. P. 4(c)(1).  As the Plaintiff previously conceded regarding the prior ineffectiveness of service, a defendant sued in both his official and individual capacity must be served in each capacity.  Gilmore v. Wolfe, No. CV 15-00280-BAJ-RLB, 2016 WL 438978, at *2 (M.D. La. Feb. 3, 2016) (defendants served in their individual capacities must be served pursuant to Rule 4(e) whereas defendants sued in their official capacities must be served pursuant to Rule 4(j)(2)); Moore v. Hosemann, 591 F.3d 741, 747 (5th Cir. 2009).

Plaintiff's counsel, for her part, does not dispute that she attempted to serve the Officer Defendants through their attorneys of record in this case.   Rather than acknowledging the failure to comply with clear rules, Plaintiff's counsel merely provides excuses for her conduct.  For example, counsel argues that service was "very challenging" because Defendants' counsel had refused to accept service on two occasions; thus, she

10

was required to make "several trips to the Marshall's Office and Defendants' counsel office when Plaintiff's counsel was very ill."  Record Document 54, p. 8.  The refusal of service "irrational[ly] inconvenience[d]" Plaintiff's counsel, yet she went "the extra mile" to enter the lobby of opposing counsel's office to watch service occur.  Id.  As to Defendant Desadier, who is represented by a different attorney, Plaintiff's counsel says that she spoke "with Mr. Calvit before serving him to inform him that she intended to serve him."  Id. at 9.  Based on his response of "okay," she believed he was amenable to accepting service for Desadier.  Id.

The question before the Court is whether service on the Officer Defendants' attorneys in this matter constitutes effective service.  The Court finds it does not.  Federal Rule of Civil Procedure 4(e) provides that individuals may be served by:

> (1) following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Louisiana state law, in turn, provides that service on individuals may be either personal or domiciliary.  La. Code Civ. P. art 1231.

Here, Williams served Defendant Desadier through his attorney of record, Mr. Calvit.  Williams attempted to serve the remaining Officer Defendants through their attorney of record, Mr. Creekbaum, who is an Assistant City Attorney for the City of Monroe.  Neither the plain language of federal law nor Louisiana law allows for service of process on a party's attorney, unless the attorney has been appointed to receive such service of process.  To be sure, the Fifth Circuit has held that "service of process is not effectual on an attorney solely by reason of [his] capacity as attorney."  Calhoun v. City of Houston Police Dep't, 855 F. App'x 917, 921 (5th Cir. 2021) (quoting Ransom v. Brennan, 437 F.2d 513, 518 (5th Cir. 1971)).  Plaintiff must demonstrate that the attorney has "actual authority to accept service of process."  Maiz v. Virani, 311 F.3d 334, 340 (5th Cir. 2002); see also Brown v. Bridges, 2015 WL 11121011, at *2 (N.D. Tex. Jan. 30, 2015) (observing that the existence of the attorney-client relationship does not by itself constitute authority to accept service.).  In this case, Plaintiff has failed to demonstrate that either Mr. Calvit or Mr. Creekbaum were agents "designated to accept service on the officers' behalves."  Calhoun, 855 F. App'x at 921.  Nor, for that matter, has Plaintiff attempted to provide argument or evidence that either attorney had the actual authority to accept service of process on behalf of their clients.

Plaintiff's explanation that Mr. Calvit did not inform counsel that he could not accept service is unavailing.  The parties agree that Mr. Calvit told Plaintiff's counsel he lacked authority to waive service and that Plaintiff's counsel needed to follow proper legal channels to perfect service.  It is not Mr. Calvit's responsibility to inform Plaintiff's counsel of the manner of perfecting service.  Mr. Calvit's alleged failure to specifically articulate

that service on him would be ineffective does not somehow grant him the legal authority to accept service on behalf of his client.  The law requires more than this; the defendant must take some action to indicate that he has given his attorney authority to accept service.  See Cactus Pipe & Supply Co. v. M/V Montmartre, 756 F.2d 1103, 1111 (5th Cir. 1985) ("Apparent authority is created as to a third person by conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him.").  No such evidence exists in this case, nor has Plaintiff's counsel made any effort to justify her actions on legal grounds.  It is clear that Plaintiff has not served the Officer Defendants in their individual capacities in any permissible fashion; service is thus invalid.

The question now is what is the proper remedy for the violation.  With respect to the timing of service, Rule 4 provides that

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period . . . .

Fed. R. Civ. P. 4(m).[6]  However, even if good cause is not shown, a district court has the discretion to extend the time allowed for service.  Newby, 284 F. App'x at 149. The court

---

[6] Good cause under Rule 4(m) requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013) (internal citation omitted).  Additionally, some "showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required." Id. (citing Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir. 1985)).  The plaintiff bears the burden of

may appropriately exercise this discretion when, for example, the statute of limitations would bar a refiled action, or when the defendant is evading service or conceals a defect in service.  Id.

Here, the Court's initial inclination is to dismiss without prejudice Williams's claims against the Officer Defendants in their individual capacities.  There are myriad reasons supporting this option.  This is not Plaintiff's counsel's first bite at the apple.  A full year ago, the Court engaged in a nearly-identical exploration of Plaintiff's failure to perfect service in this very case.  At that time, the Defendants sought to dismiss the case against them, and this Court declined that harsh remedy, instead allowing Williams another opportunity to remedy his service deficiencies.  The Court's concern is that the import of the situation, i.e., the prospect that the case may be dismissed for failure to validly serve the Defendants, is not resonating with Plaintiff's counsel because here we are, yet again. The violations of the rules appear to be consistent and flagrant; and, adding to the problem are the delays on Plaintiff's end, which result in counsel attempting service on the very last possible day of the extended time period, before she even filed the second amended complaint.

The Court's conclusion that Plaintiff's counsel fails to appreciate the severity of the situation is bolstered by a reading of Plaintiff's opposition to the motion to dismiss.  The 2023 opposition to dismissal on service issues is almost identical to the opposition Plaintiff filed in 2022 regarding Defendants' motion to dismiss.  Compare Record Document 54,

---

demonstrating good cause. Newby v. Enron Corp., 284 F. App'x 146, 149 (5th Cir. 2008).

<u>with</u> Record Document 31.  Of the eleven pages that are relevant to sufficiency of service, the 2023 opposition contains only two paragraphs and one sentence that are new, while the rest of the content is a copy and paste from the opposition filed a year ago.  This is consequential (and frustrating), as the reason for dismissal in 2022 was a different service issue than the one facing the Court in 2023.  Yet, Plaintiff's counsel has primarily relied on old filings and inapplicable arguments to survive dismissal.

Further, Williams has made no argument in support of a finding of good faith to excuse the delay.  Rather, Plaintiff's counsel seems to refute her legal obligations, an approach with which the Court is losing patience.  Indeed, she has been warned before by this Court and by others within the Western District of Louisiana.

Nonetheless, even when a plaintiff lacks good cause for the failure to serve a defendant, the court has the discretion to extend the time for service.  <u>Millan v. USAA Gen. Indem. Co.</u>, 546 F.3d 321, 325 (5th Cir. 2008).  Such a "discretionary extension" may be warranted when the statute of limitations would bar the refiling of the action.  This is likely the case here, as recognized by Plaintiff's counsel.  The Fifth Circuit has instructed district courts to assess dismissal under a "heightened standard" when the dismissal results in the inability to refile because such a dismissal "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim."  <u>Thrasher</u>, 709 F.3d at 512-13.  "[I]t is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice."  <u>Id.</u> at 513 (internal marks omitted).  Otherwise, the court should consider the imposition of lesser sanctions.

In the case at bar, Plaintiff's counsel, not Plaintiff, is solely to blame for the failure of service.  As the legal representative for Williams, there is no excuse for counsel's lack of knowledge and/or repeated non-compliance with the Federal Rules of Civil Procedure. Nevertheless, the Court does not find that dismissal, which may be effectively dismissal with prejudice, is the appropriate remedy under these circumstances.  This is especially so considering that Williams has brought a significant constitutional claim, the facts of which have already resulted in the criminal conviction of Defendant Desadier.

Where there is a "reasonable prospect that plaintiff ultimately will be able to serve defendant properly," the proper course of action is to quash service and allow the plaintiff another opportunity to effectuate service, as opposed to dismissing the case.  5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1354 (3d ed.).   Thus, the Court will construe the Officer Defendants' motion to dismiss as a motion to quash Williams's insufficient service of process.  Hayward v. Douglas, No. CIV.A. 07-72-FJP-DLD, 2010 WL 128320, at *2 (M.D. La. Jan. 12, 2010). And, in that respect, the motion is granted. Williams will be afforded one final opportunity to perfect service.  Service must be effectuated by **Friday, October 27, 2023**.  Counsel is cautioned that no extensions will be granted.  Her actions have delayed this case long enough.

### III.   Sheriff Russell's Partial Motion to Dismiss.

The Court next turns to Sheriff Russell's partial motion to dismiss.   Record Document 51. This motion seeks dismissal of the 42 U.S.C. § 1983 claims against Ouachita Parish Sheriff Russell but does not seek dismissal of any of Williams's state law claims.

16

The Court notes that Williams does not oppose the dismissal of his federal claims against Sheriff Russell.

According to Williams, Sheriff Russell is liable under § 1983 for acts that occurred when Williams was placed into custody at OCC. There, he claims that he was placed into an "isolation/suicide cell or rubber room" and isolated for fourteen days "to allow his wounds to heal before the general public could view his injuries;" that he was denied the right to call his pastor; that he was denied doctor-prescribed medications for three weeks; that he suffered two epileptic seizures at OCC and was "denied proper and adequate treatment as a matter of law;" and that he "received little or no medical attention for his wounds." Record Document 39, p. 19. Williams argues that he "fully believes that due to the action of the OCC employees, under the care of Defendant, Sheriff Jay Russell" that Sheriff Russell is "on behalf of the employees of OCC" engaged in a conspiracy to cover up for the Monroe Police Department's actions. Id. at p. 20. Lastly, Williams alleges that Sheriff Russell "knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control Officers in his care from depriving Petitioner of his constitutional and statutory rights, privileges, and immunities . . . ." Id. Sheriff Russell seeks dismissal of these claims, alleging that Williams has failed to state a claim against him, such that his claim cannot survive scrutiny under Federal Rule of Civil Procedure 12(b)(6).

A.    Federal Rule of Civil Procedure 12(b)(6) Standard.

Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim showing the pleader is entitled to relief. A complaint is not required to contain detailed

factual allegations, however, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. See id.  This plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  However, the complaint cannot be simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  See Twombly, 550 U.S. at 555-56.

The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. See Twombly, 550 U.S. at 555; In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

As the Fifth Circuit has explained, in order to survive a 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Rios v. City of Del Rio, Tex., 444 F.3d 417, 420–21 (5th Cir. 2006) (internal marks and citation omitted).  Moreover,

> a statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.  The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint.  Further, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

Id. at 421 (internal marks and citations omitted).

B.    Law and Analysis.

In the instant case, Williams has sued Sheriff Russell in his official capacity only. See Record Document 39, p. 3.  The federal claim brought against Sheriff Russell is premised on § 1983 liability.  Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law.  42 U.S.C. § 1983. This statute does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws.  See Graham v. Connor, 490 U.S. 386, 393–94 (1989); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

Williams's complaint is devoid any allegation that Sheriff Russell personally participated in any acts that violated Williams's constitutional rights, such that Williams

could pursue an individual capacity claim against him.  In fact, Williams's complaint specifically states that he sues Sheriff Russell in his official capacity only.[7]  Williams's claim against Sheriff Russell is based on the Sheriff's official status as the head of the Ouachita Parish Sheriff's Office.  A suit against a sheriff in his official capacity for the tortious actions of his employees is a suit against the municipality.  Burge v. Par. of St. Tammany, 187 F.3d 452, 469-70 (5th Cir. 1999); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (explaining that an official capacity suit is the equivalent of a suit against the entity of which the officer is an agent).  However, "a municipality cannot be held liable solely because it employs a [constitutional] tortfeasor."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).  A municipality is liable under Monell when the execution of one of its customs or policies was responsible for the constitutional harm.  Id. at 694.

To successfully prove municipal liability, a plaintiff must establish three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)."  Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002) (citing Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)) (internal marks omitted).  Thus, to sufficiently plead an official capacity suit, Plaintiff must plausibly allege, with sufficient factual content, that a custom or policy played a part in the violation of federal

---

[7] Plaintiff's request for punitive damages against Sheriff Russell in his individual capacity, which request appears in Plaintiff's prayer for relief, is dismissed.  There is no individual capacity claim against Sheriff Russell.

law.  Turner v. Houma Mun. Fire and Police Civ. Serv. Bd., 229 F.3d 478, 483 n.10 (5th Cir. 2000).

A review of Williams's complaint confirms that not only has he failed to include any allegation of an unlawful custom or policy in the Sheriff's Office, he also has alleged no facts that would support an inference that any Ouachita Parish Sheriff's deputies acted pursuant to any unlawful policy or custom.  In other words, there is no allegation, nor a reasonable inference based on sufficiently alleged facts, that the Sheriff's Office maintained a specific policy or custom that caused a constitutional violation.  As the Fifth Circuit has explained, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."  Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997).

Although the complaint invokes the language "fail[ure] to instruct, supervise, [and] control Officers in his care from depriving Petitioner of his constitutional and statutory rights, privileges, and immunities," these are conclusory statements devoid of any factual context.  Williams has failed to articulate what rights, privileges or immunities were violated by the Sheriff's alleged failure to instruct, supervise, or control.  Nor, for that matter, has he set forth any specifics regarding said failure to instruct, supervise, or control and in what context those alleged failures took place.  A complaint's mere recitation of legal terminology is insufficient to plausibly allege a claim that will survive a Rule 12(b)(6) motion to dismiss.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Williams has

not stated a claim against Sheriff Russell, and Sheriff Russell's partial motion to dismiss is granted.  Williams's § 1983 claim against Sheriff Russell is dismissed with prejudice.

The Court observes that Williams's complaint alleges a conspiracy.  Either Sheriff Russell or his employees are on one side of the conspiracy, but strangely enough, the complaint does not allege which actor is on the other side of that conspiracy.  In other words, there is no mention of any other person with whom either Sheriff Russell or his employees conspired.   In the complaint, the conspiracy claim is situated within a paragraph alleging a violation of the Louisiana constitution, and thus does not appear to pertain to any § 1983 allegations.  But to the extent that Williams attempts to bring a § 1983 conspiracy claim against Sheriff Russell, it cannot survive the motion to dismiss.

To establish a § 1983 conspiracy claim, Williams must show: "1) an agreement between the alleged conspirators to commit an illegal act, and 2) an actual deprivation of constitutional rights."  Navarro v. City of San Juan, 624 F. App'x 174, 179 (5th Cir. 2015).  Here, Williams has not alleged who the conspirators are; he has not set forth the agreement; nor has he plausibly alleged, in more than conclusory terms, that the conspiracy resulted in the deprivation of constitutional rights.  Consequently, the § 1983 conspiracy claim must be dismissed, to the extent Plaintiff intended to state this claim in the first place.

## IV.    The City Defendants' Motion to Dismiss.

Williams has sued the City of Monroe and certain Defendant police officers in their official capacities.  Pursuant to Rule 12(b)(6), the City of Monroe seeks to dismiss: (1) all claims against the officers in their official capacities as duplicative of the claims against

the City;[8] (2) the § 1983 <u>Monell</u> claim; (3) state law claims of negligence and vicarious liability; and (4) a claim for punitive damages against the City.  These will be addressed in turn.

      A.    <u>Law and Analysis</u>.

        1.    Official Capacity Claims.

The City seeks dismissal of the official capacity claims against Defendants Zordan, Ellis, Bartley, Reddick, Guiterrez, Crowson, and Thigpen.  The City argues that a claim against an officer in his official capacity is treated as a suit against the municipality itself. The City is correct.  The Fifth Circuit has held that "[a] claim against an officer in his official capacity is treated as a claim against the municipality." <u>Jordan v. Brumfield</u>, 687 F. App'x 408, 415 (5th Cir. 2017).  Because a claim against an officer in his official capacity duplicates the claim against the municipality, a district court faced with both claims may dismiss the official capacity claims. <u>Castro Romero v. Becken</u>, 256 F.3d 349, 355 (5th Cir. 2001).  Accordingly, the official capacity claims against Zordan, Ellis, Bartley, Reddick, Guiterrez, Crowson, and Thigpen are dismissed with prejudice as duplicative of the municipal liability claims against the City.

        2.    <u>Monell</u> Claim.

The City Defendants next seek to dismiss Williams's § 1983 municipal liability claims.  Williams's complaint broadly alleges a generalized failure to train, failure to supervise, and failure to discipline, along with a deficient de-escalation policy and/or insufficient training in said policy.  Williams contends that his "incident shows that [he] is

---

[8] Williams does not oppose the dismissal of the official capacity claims as duplicative.

not an outlier but rather part of a continuing pattern, custom, and practice."  Record

Document 39, p. 12.  Further, he alleges that the Monroe Police Department

> has a history of not properly disciplining or firing officers when they engage
> in illegal or improper conduct, including excessive use of force and improper
> deadly use of force.  This is evidenced by the fact that Jared Desadier was
> previously fired [by the] Monroe Police Department but was subsequently
> rehired and allowed to patrol . . . .

Id.  Williams's complaint cites the following policies or lack of policies in support of his

claim of municipal liability:[9]

> 1.  Failing to properly hire, supervise, and train MPD Officers;
>
> 2.  Failing to promulgate, train, and enforce an adequate and constitutional
> use of force policy;
>
> 3. Failing to promulgate, train, and enforce an adequate and constitutional
> lethal use of force policy;
>
> 4. Failing to promulgate, train, and enforce an adequate and constitutional
> de-escalation tactics [sic];
>
> 5. Failing to promulgate, train, and enforce an adequate and constitutional
> methods [sic] through which MPD officers should interact with citizens who
> are African American and homeless;
>
> 6. Failing to promulgate, train, and enforce an adequate and constitutional
> non-discriminatory law enforcement practices [sic] to protect African-
> American citizens of Monroe;
>
> 7. Failing to reprimand and discipline MPD Officers who engage in
> misconduct;

---

[9] Plaintiff's scattershot approach of haphazardly invoking generalized policing practices
and/or policies (many of which are plainly inapplicable here) and then summarily listing
causes of action, has greatly hampered the Court's ability to identify the claims at issue,
discern whether they have been plausibly alleged, and efficiently dispose of the pending
motions.  Plaintiff's direct allegations are included in this ruling as examples of the
shotgun manner of pleading counsel has exhibited in this case.

8. Failing to retrain and/or otherwise control MPD Officers who engage in excessive force and/or unjustified shooting against civilians;

9. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

10. Failing to adequately investigate complaints and allegations of excessive force and other misconduct by MPD Officers;

11. Failing to require and enforce [sic] MPD officers to accurately and timely report misconduct they are aware other MPD officers are conducting or have conducted;

12. Failing to retrain and otherwise control MPD officers who engage in excessive force and unjustified use of deadly force[;]

13. Failing to properly investigate allegations prior to issuing arrest warrants;

14. Tacitly approving of MPD Officers using their power and position to interfere with other citizens' rights;

15. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's agents, servants, and employees in its Police Department; . . .

16. Allowing the practice and custom of a "police code of silence," resulting in MPD Officers refusing to report instances of police misconduct of which they are aware[; and]

17. Failing to train, supervise, and discipline MPD officers regarding providing honest and accurate accounts of officer involved shootings to investigating authorities;

Record Document 39, p. 13.

Plaintiff further alleges that the City has "encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs":

1. Use of force by police officers;

2. Police officers' duties and responsibilities to engage in proper de-escalation techniques;

3. The proper exercise of police powers, including not limited to the making of an arrest and the use of deadly force;

4. Police Officers duties [sic] not to attempt to kill its citizens;

5. Police Officers duties [sic] not to un-necessarily use deadly force;

6. Non-race-based policing and use of force;

7. The failure to identify and take remedial or disciplinary action against officers who were the subject of prior civilian or internal complaints of misconduct;

8. Failing to retrain and/or otherwise control officers who engage in excessive force and/or unjustified shooting against civilians;

9. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

10. The hiring and retention of officers who are unqualified for their employment positions;

11. Failure to require, discipline, and supervise MPD officers for not reporting illegal, impermissible, improper, or any other conduct of other MPD officers that is unbefitting of an officer or violates MPD policies and protocols;

12. The failure of officers to follow established policies, procedures, directive [sic], and instructions regarding arrests, use of force, and institution of criminal charges under such circumstances as presented by this case;

13. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Monroe Police Departments [sic];

14. As a matter of both policy and practice the City of Monroe and the MPD facilitating this type of misconduct by failing to protect civilians from reckless indifference of Defendant's City agents, servants, and employees in its Police Department;

15. Failure to train, supervise, and discipline Officers who are not honest and accurate with investigating agencies about officer involved shootings, as well as harass and intimidate civilian witnesses.

26

Id. at p. 16.

Again, § 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has held that municipalities such as the City of Monroe are "persons" within the meaning of § 1983. Monell, 436 U.S. at 690. However, a municipality cannot be sued under § 1983 based on a theory of respondeat superior for a constitutional tort committed by one of its employees. Id. at 691. A municipality is only responsible for a constitutional harm if the execution of one of its customs or policies caused the injury. Id. at 694.

As set forth earlier in this opinion, to successfully prove municipal liability, a plaintiff must establish three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." Pineda, 291 F.3d at 328. Requiring a plaintiff to identify an official policy ensures that the municipality will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404–05 (1997).

To satisfy the "official policy" element of Monell, the plaintiff may either point to "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority," or, alternatively, "[a] persistent, widespread practice of city officials or employees, which, although not authorized by

27

officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy," even though it has not received formal approval.  Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).  A plaintiff can prove the existence of a custom in two ways.  First, the plaintiff may show a single unconstitutional action taken by a final policymaker.  Zarnow v. City of Wichita Falls, 614 F.3d 161, 169 (5th Cir. 2010).  "A customary municipal policy cannot ordinarily be inferred from single constitutional violations" unless the policymaker is the one who committed the constitutional violation.  Piotrowski, 237 F.3d at 581.  In the alternative, the plaintiff may establish a pattern of unconstitutional conduct by municipal actors or employees who are not policymakers.  Zarnow, 614 F.3d at 169.

The second element of municipal liability requires that either actual or constructive knowledge of the policy or custom be attributable to the municipality's governing body or to an official to whom a governing body has delegated final policymaking authority.  Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir. 2010) (quoting Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir. 1984)). Finally, with regard to the third Monell element, "there must be a direct causal link between the municipal policy and the constitutional deprivation."  Piotrowski, 237 F.3d at 580. In other words, the policy must be the "moving force" behind the injury.  Id. Without this high threshold of proof, "municipal liability collapses into respondeat superior liability."  Id. (quoting Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998)).

In the instant case, Williams's governing complaint sets forth a kaleidoscope of allegations, some of which plainly were pled insufficiently.  However, the Court finds that

Williams has abandoned the majority of those allegations. That is, in opposition to the motion to dismiss, he did not defend or clearly mention any alleged policies or customs other than ratification, inadequate discipline, and inadequate complaint-taking procedures. The Fifth Circuit's "well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." McClelland v. Katy Indep. Sch. Dist., 63 F.4th 996, 1010 (5th Cir. 2023) (citing Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that plaintiff abandoned claim by failing to defend it in response to motion to dismiss)). Thus, the Court will focus on these three theories of Monell liability, and all other theories are deemed abandoned and dismissed.

Even when narrowed to three grounds of Monell liability, Williams's allegations are still difficult to parse. Williams's opposition to the motion to dismiss argues the City "ratified a custom that caused Plaintiff's injuries by condoning or ratifying the unconstitutional and illegal actions of Desadier and Rachow." Record Document 54, p. 20. Williams further alleges that the ratification of the excessive force conduct is evidenced by the Police Department's cover-up, that is, that the supervisors actively concealed what happened, that those on the scene failed to report the actions of Defendants Desadier and Rachow, and that the Police Department "failed to process or do anything" with Plaintiff's excessive force complaint. Id. If one accepts the invitation to rely on a series of unsubstantiated inferences, the alleged ratification itself proves there is a "constitutionally inadequate official policy towards officer discipline and handling complaints against officers for their use of excessive force." Id. Williams thus concludes

29

that "[a]ccordingly, the City/Police Department's inadequate complaint procedure and enforcement of any such procedure was the moving force behind the violation of Plaintiff's constitutional right to be free from the use of excessive force by police officers." Id.  This is essentially the entirety of Williams's defense of and clarification of his Monell claims.

Williams's Monell claims cannot survive dismissal.  The law requires Williams to identify either an official policy or a persistent widespread practice that constitutes a custom.  See Bennett, 735 F.2d at 862.  There are no facts pled that identify an official policy promulgated by a City policymaker, and thus Williams is forced to point to a custom or widespread practice.  And because the alleged wrongdoers in the instant case are not policymakers for the City[10] such that Williams could rely on a single unconstitutional action, he is instead required to establish a pattern of unconstitutional conduct.  See Zarnow, 614 F.3d at 169.  That means he must plausibly allege, in more than conclusory terms, constitutional violations that occurred in cases other than his own.  See Peña v. City of Rio Grande City, 879 F.3d 613, 622 (5th Cir. 2018) ("To plausibly plead a practice so persistent and widespread as to practically have the force of law, . . . a plaintiff must do more than describe the incident that gave rise to his injury." (cleaned up)).

---

[10] In this case, Williams has alleged that Chief Zordan is the only official policymaker; he has not alleged that either Interim Chief was a policymaker at the time of the events in question.  "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'"  Zarnow, 614 F.3d at 167 (quoting Webster, 735 F.2d at 841).  As the Fifth Circuit has recognized, there is a distinction between a decisionmaker and a policymaker.  Id.  "The fact that an official's decisions are final is insufficient to demonstrate policymaker status."  Id.  However, to the extent that another Interim Chief was a policymaker at the time of the events in this case, which, again, Williams has not alleged, the Court finds that the pleadings nonetheless fail to plausibly allege that said policymaker committed a single constitutional violation sufficient to confer liability on the City.

As the Fifth Circuit has explained, "[i]n order to find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" Davidson v. City of Stafford, 848 F.3d 384, 396 (5th Cir. 2017) (quoting Peterson v. City of Fort Worth, 588 F.3d 838, 850 (5th Cir. 2009)).   "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." Id.  "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." Piotrowski, 237 F.3d at 581.  Because Williams has not plausibly alleged, beyond mere conclusory allegations, that this type of unconstitutional conduct has occurred in cases other than his own, he has failed to satisfy this burden.  In sum, Williams has failed to plausibly allege that any official City of Monroe policy was the driving force for the unconstitutional action, or that the unconstitutional act was part of a widespread practice so common and well-settled as to constitute municipal policy.

Williams's complaint also fails to provide facts that plausibly allege the third element of Monell liability, i.e., the policy or custom was the moving force behind Defendant Desadier's use of excessive force.  Proving this element requires two showings: (1) that the challenged policy or custom was either unconstitutional or promulgated with deliberate indifference toward its known or obvious unconstitutional effects and (2) that the challenged policy caused the plaintiff's constitutional deprivation. Piotrowski, 237 F.3d at 579-80.  Deliberate indifference is a stringent standard: it requires "proof that a municipal actor disregarded [the] known or obvious consequence" that constitutional violations

would result and usually demands notice of a "pattern of similar constitutional violations." Porter v. Epps, 659 F.3d 440, 446–47 (5th Cir. 2011) (citing Connick v. Thompson, 563 U.S. 51 (2011)). In addition, the plaintiff must describe "a direct causal link between the municipal policy and the constitutional deprivation," Piotrowski, 237 F.3d at 580, which "cannot be conclusory; it must contain specific facts," Kitchen v. Webre, No. 13-6705, 2014 WL 2566065, at *3 (E.D. La. May 14, 2014) (quoting Spiller, 130 F.3d at 167).

Williams's complaint alleges that the violation of his constitutional rights was "caused by the actions and/or inactions of the Defendant the City of Monroe, and Defendant Zordan in his Official Capacity which has encouraged, tolerated, ratified, and has been deliberately indifferent to [certain] policies, patterns, practices, and customs."[11] Record Document 39, p. 15.  This is wholly conclusory.  And, despite using the term "moving force" in his opposition to the motion to dismiss, Williams has nevertheless failed to plausibly allege how a concealment of the incident, inadequate prompt discipline of the officers in this case, or an inadequate complaint process in this case were the moving force behind the constitutional violation, i.e., Defendant Desadier's use of excessive force. Instead, Williams's language simply restates an element of the cause of action without providing any specific facts to sustain his claim.  Williams has not plausibly alleged facts that would support a causal connection between an official custom and the deprivation of his right against the use of excessive force.  While he does plausibly allege that individual Defendants violated his constitutional rights, that allegation does not support the

---

[11] The relevant policies, patterns, practices, and customs identified by Williams are those set forth on pages 25-26 of this opinion.

conclusion (or even an inference) that a Police Department policy was the moving force behind the constitutional violation.  The distinction is critical, as the City cannot be held vicariously liable for actions by individual defendants that may violate City policy.  In other words, merely establishing a constitutional violation by an employee of a municipality is insufficient to impose liability on the municipality under § 1983.

Because Williams's complaint does not provide facts to plausibly sustain the elements of a <u>Monell</u> claim, the Court must dismiss this claim with prejudice. [12]

3.      State Law Claims.

Along with his federal law causes of action, Williams alleges that the City is also liable under multiple state law theories.  In the instant motion, the City seeks to dismiss Williams's state law negligent hiring, training, and supervision claims, as well as his state law vicarious liability claim.

At this point in the proceedings, the Court declines to address the validity of Williams's state law claims, over which the Court is currently exercising supplemental jurisdiction.   Under 28 U.S.C. § 1367(a), a district court can exercise supplemental jurisdiction over a claim that is so related to a case or controversy over which the court has original jurisdiction that the supplemental claim forms part of the same case or

---

[12] The Court notes that in his opposition to the City Defendants' motion to dismiss, Williams defends his supervisory liability and failure to provide medical care claims.  To the extent these two claims are premised on § 1983 <u>Monell</u> liability, they are dismissed for the reasons set forth above; Williams has failed to plausibly allege the necessary elements of a <u>Monell</u> claim.  To the extent these claims are premised on a non-<u>Monell</u> legal theory, they survive dismissal, as the City Defendants' motion did not independently address the validity of these claims under any other doctrine.

controversy. 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction over such claim if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction, in exceptional circumstances.  Id. These factors must be considered on a case-by-case basis, and no single factor is dispositive.  Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par., 373 F. App'x 438, 442 (5th Cir. 2010). In general, a district court "should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." Brookshire Bros. Holding v. Dayco Prod., Inc., 554 F.3d 595, 602 (5th Cir. 2009).

The Court pretermits a determination of the validity of Williams's state law claims, pending a resolution of which federal law claims remain in this case.  Part of that decision is contingent upon whether Williams perfects service in a timely manner.  If he does not perfect service, then all claims against the Officer Defendants will be dismissed.  And, as discussed above, the Monell claim against the City has been dismissed.  So, too, have the claims against the officers in their official capacities.  Thus, it is premature at this stage to delve into the Plaintiff's supplemental state law claims.  This portion of the City Defendants' motion is denied with the right to reurge.

4.   Punitive Damages.

Finally, the City seeks dismissal of Williams's request for punitive damages.  The Court previously dismissed Williams's claim for punitive damages against the City of

34

Monroe and the officers in their official capacities.  <u>See</u> Record Document 35, p. 7.  And yet, in the second amended complaint's prayer for relief, Williams seeks "[p]unitive damages as to all Defendants (with the exception of the City of Monroe and MPD) Zordan in his official capacity, and Russell in his individual capacity."  Record Document 39, p. 21. The City's motion seeks to dismiss the claim for punitive damages.  In response, Williams argues only that he has sufficiently stated a claim for punitive damages against Defendants Desadier and Rachow in their individual capacities.  Williams was not permitted to amend his complaint to add in any claims the Court dismissed.  Thus, the claim for punitive damages against the City and the officers in their official capacities remains dismissed and cannot be revived by the Plaintiff.  This portion of the motion is denied as moot.

**V.      Conclusion.**

For the foregoing reasons,

**IT IS ORDERED** that the City Defendants' motion to dismiss under Rule 12(b)(6) [Record Document 45] is **granted in part** and **denied in part**.  The motion is granted to the extent that (1) the claims against the defendant officers in their official capacities are dismissed as duplicative of the claim against the City of Monroe and (2) the Plaintiff's § 1983 <u>Monell</u> claim against the City Defendants is dismissed with prejudice.  The motion is denied as moot as to the Plaintiff's request for punitive damages against the City or any official-capacity Defendant because this punitive damages claim was dismissed in a prior ruling. The Court prohibits the Plaintiff from sua sponte reviving his dismissed punitive damages claim.  The Defendants' motion is denied with respect to the Plaintiff's state law claims.

**IT IS FURTHER ORDERED** that the Officer Defendants' motion to dismiss under Rule 12(b)(5) [Record Document 49] is construed as a motion to quash, and to that extent, the motion is **granted**.  Service is quashed in this matter.  Williams must perfect service by **October 27, 2023**; no extensions will be granted.

**IT IS FURTHER ORDERED** that the partial motion to dismiss by Sheriff Russell under Rule 12(b)(6) [Record Document 51] is **granted**.  The § 1983 claims against Sheriff Russell are dismissed with prejudice.

**THUS DONE AND SIGNED** this 29th day of September, 2023.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE